35 C.C.P.A. (Patents)

**DOLL v. KRASNOW et al.**
**Patent Appeal No. 5407.**

Court of Customs and Patent Appeals.
April 2, 1948.

Campbell, Brumbaugh & Free, of New York City (Worthington Campbell, of New York City, of counsel), for appellant.

Shelley Krasnow, pro se.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention to appellees in an interference proceeding involving six counts, numbered 1 to 6, inclusive. The subject matter as defined in the decision of the board is "a process of perforating an oil well casing at the proper point to bring an oil well into production and certain apparatus which is suitable for carrying out this process." The subject matter is described by the board as follows: " * * * This process is designed to make unnecessary the determination of the distance between the surface of the ground and the producing stratum in the uncased bore-hole and the use of this measurement (with consequent errors due to cable stretch and flotation) to determine the point of perforation of the well casing at the producing level after the casing is inserted. In the process of the counts a marker is established in known relation to the producing stratum and this marker is located by the proper instrument after the well is cased."

Counts 1, 2, and 3 are for the process; the others for the apparatus.

The broadest of the two classes are counts 3 and 4, which read:

"3. In a method of producing a fluid from the earth, the steps of: forming in the earth a bore hole which intersects a production stratum; establishing a marker below the surface of the earth and in a known relation to said production stratum; setting a casing in said bore hole so as to intersect said production stratum; locating said marker; and then perforating said casing in a position correlated with said marker and determined in accordance with said known relation of said production stratum and said marker, whereby said perforating will connect the interior of said casing with said production stratum.

"4. In means for perforating a casing in a well, the combination of: a perforator; means for moving said perforator within said casing; marker locating means connected to said perforator so as to move therewith; and means for actuating said perforator."

It appears that the counts originated as claims 1, 2, 3, 12, 13, and 16 of a patent, No. 2,228,623, issued to George H. Ennis January 14, 1941, based upon an application, Serial No. 342,320, filed June 25, 1940. Claim 12 of the Ennis patent, an apparatus claim, was copied into the application of Krasnow et al., Serial No. 392,188, filed May 6, 1941, and the interference as originally declared under date of September 16, 1941, was between Ennis and Krasnow et al.

The application of Doll, Serial No. 330,-545, was filed April 19, 1940, and it along with a joint application of two parties named Kaveler and Piety became involved in an interference, No. 79,272, with the Ennis patent. Counts 5 and 6 of that interference were identical with counts 4 and 6 of the instant interference, and in the course of the proceedings counts were added to that interference which corresponded to counts 1, 3, and 5 of the instant interference. Count 4 appears to have been claim 12 of the Ennis patent.

On August 12, 1942, the Doll and Kaveler et al. applications were added to the instant interference which thus became a four-party interference.

It is unnecessary to recite in detail the various proceedings incident to the four-party interference, it being sufficient, so far as the issues before us are concerned, to say that Ennis (in whose patent, as has been stated, the counts originated) and Keveler et al. were eliminated before the final hearing by the Board of Interference Examiners.

By reason of the respective filing dates of Doll (April 19, 1940) and Kras-

now et al. (May 6, 1941), Doll became the senior party of what had become a two-party interference, and it was incumbent upon Krasnow et al. to prove priority by a preponderance of the evidence.

In the preliminary statement of Doll it was alleged that he had filed applications in a number of foreign countries, the earliest of them in point of time being one (Serial No. 445,411) filed in France April 27, 1939. This date was relied upon for constructive reduction to practice and it was so awarded by the board.

In their preliminary statement Krasnow et al. alleged conception and the beginning of the exercise of "reasonable diligence in adapting and perfecting the invention" in March 1934, with reduction to practice "at least as early as April, 1937." They introduced in evidence an application (Serial No. 137,380) filed April 16, 1937, and also one (No. 301,078) filed on October 24, 1939, as proof of constructive reduction to practice. The board held that both those applications adequately disclosed the invention and awarded Krasnow et al. priority upon the basis of the April 1937 date.

This, it will be observed, was practically two years before the French filing date of Doll—the earliest date upon which Doll can rely for any phase of the invention.

The record in the case is an extensive one, and elaborate briefs were filed before us on behalf of both parties. Numerous questions were raised, first and last, during the prosecution of the controversy in the Patent Office, many of which are not involved here.

As the case comes to us the primary question for consideration is whether the Krasnow et al. application, Serial No. 137,-380, filed April 16, 1937, disclosed the subject matter of the counts. If it be found that the board was correct in holding that it did so, it is unnecessary to a decision of the case to discuss the various allegations of Krasnow et al. in which they charge error in the board's findings with respect to the Doll disclosure in the French application of April 27, 1939, nor need the Krasnow et al. application, Serial No. 301,078, filed October 24, 1939, be discussed.

In view of the situation thus described we deem it proper to quote the following from the board's decision (page references being omitted):

"The Krasnow et al. application Serial No. 137,380 describes apparatus and a method for measuring radioactivity in a bore-hole. One form of the apparatus described is a radioactivity detecting device which may be lowered by cable into a bore-hole and which transmits to the surface of the earth electrical impulses which are a measure of the radioactivity at the point where the detecting apparatus is suspended in a bore-hole * * *. Another form of apparatus employs an electroscope which may electrically transmit impulses to the surface of the ground to indicate the presence of radioactive materials * * *. The Krasnow et al. applications describe a procedure in which the detecting apparatus is used to measure the natural radioactivity of the various levels or strata of a bore-hole, whether cased or uncased. It is stated that this radioactivity will vary according to the nature of the material at the various levels and that oil-bearing strata are often markedly radioactive as compared with the surrounding rock material because of the superior absorptive property of petroleum for radium emanation. In application Serial No. 137,380 on page 10, first full paragraph, a method is described for locating petroleum strata in areas of limited radioactivity by pumping radium emanation into a bore-hole to be selectively absorbed by the petroleum. The petroleum strata will, through this absorption, become more strongly radioactive and more readily detectable by the apparatus. Starting at the bottom of page 10, Krasnow et al. state that in the apparatus the member 11, the radioactivity detecting element may be combined with "a perforating tool as ordinarily used for perforating casing" so that the apparatus may be lowered until an indication of radioactivity is received. The apparatus may then be stopped and the usual perforating operation carried out. This application mentions the fact that the customary dual measurements may be dispensed with.

"It is believed apparent that the application Serial No. 137,380 adequately discloses the subject matter of the counts in issue. Applying the disclosure to the apparatus counts, counts 4, 5 and 6, it is evident that the Krasnow et al. disclosure of a combination of a perforating tool and radioactivity detecting apparatus suspended in a bore-hole by a cable and electrically transmitting signals to the surface meets the requirements of these counts. The detecting apparatus is a "marker locating means" in that it will indicate a stratum with a distinct degree of radioactivity. Such a stratum exhibiting radioactivity is in itself a marker within the purview of the counts whether that radioactivity was originally present or was created by pumping in radium emanations. The Ennis patent from which the counts were derived indicates, for example, that the active stratum be established as its own market * * *. The supporting cable is means for moving the apparatus within the casing. The detecting apparatus is an electrometric strata logging device which has a sensitive testing element attached to the perforator and a recording means outside of the well.

"Similarly, the Krasnow et al. application Serial No. 137,380 discloses a process meeting counts 1, 2 and 3. In following one embodiment of their invention, Krasnow et al. *form a bore-hole* intersecting a production stratum, *log the formation* by detecting variations in radioactivity, *establish* a marker by determining the petroleum producing level from the variation of radioactivity recorded or by pumping in radium emanation to render the petroleum stratum more radioactive (and, therefore, more readily detectable by the detecting element), locate the marker by the same detecting device, set a casing, and perforate the casing "in a position correlated with said marker" * * * all as required by count 1. The location of the marker is by electrometric means as required by count 2. The preparation of the log of the bore-hole of counts 1 and 2 is not directly required in count 3 so that the Krasnow et al. proofs suffice for this count also." (Italics quoted.)

We find no denial on the part of Doll that the matter stated in the first paragraph of the foregoing quotation as being disclosed in the Krasnow et al. application, Serial No. 137,380, is so disclosed. Indeed, its disclosure seems to us to be practically conceded in the following which we take from the Doll brief: " * * * The specification and claims [of the April 1937 application, Serial No. 137,380] were addressed to the subject matter indicated by the title: "Method and Apparatus for Measuring Radioactivity." However, it embodied as a aggregative appendage in the last paragraph, an operation which is not related to the subject matter embraced within the title and which was not claimed. As is not infrequent in such situations, Krasnow now brings the case forward because of its early date and asks that because of such appendage, various unrelated portions of the specification be pieced together and imported into such appended suggestion as evidence of conception and reduction to practice of the integrated method here in issue. The method in issue, unlike the said 1937 Krasnow application, has nothing whatever to do with "measuring radioactivity."

The brief on behalf of Doll asserts that a second primary question involved in the appeal is "Does the said Krasnow application [Serial No. 137,380] establish conception of any such method?." This means, as we understand it, the method defined in the appealed method counts.

It is not clear to us in just what sense the word "conception" is used in the question as framed, but, seemingly, from the arguments made, it was intended to urge that even if it be proper to hold that there was a disclosure which supports the counts at issue (which Doll does not concede) Krasnow et al. really had other claims not related to the subject matter of the counts in mind.

One argument presented is based upon the assertion that Krasnow et al. did not present any claims relating to the method of the counts in issue in their application, Serial No. 137,380. It is also pointed out that after Krasnow et al. had seen the Ennis patent they copied into their applica-

tion here in interference only one of its claims which was an apparatus claim, and certain letters were introduced in evidence from which, taken in connection with their failure to copy more than one claim, it is urged, in effect, that Krasnow et al. virtually conceded that they had not invented the subject matter of the method claims and the other apparatus claims of the Ennis patent, at least at any date prior to Ennis. To what extent the contention was stressed before the board is not apparent from its decision because it was not therein discussed. In view of the care with which other questions raised by the respective parties were discussed by that tribunal we have wondered if Doll's counsel in fact presented this particular contention there. However that may be, it has been pressed before us, being carried in Doll's reasons of appeal and being referred to again and again in the Doll brief. We have examined carefully the record respecting it.

It is true that Krasnow et al. in the first instance, copied only one claim from the Ennis patent, it being an apparatus claim. Also, it is true that they copied no other claims until such claims were suggested by the Primary Examiner. This seems to be explained, in part at least, in a letter that was introduced in evidence which was written by an associate attorney for Krasnow et al. (Mr. Krasnow himself seems to have represented Krasnow et al. before the tribunals of the Patent Office as he did before us) to a party who had indicated an interest in obtaining exclusive rights in the invention defined in the Krasnow et al. application which finally became involved in the instant interference. It appears from that letter that in the first action by the Primary Examiner on the claim which Krasnow et al. had copied from the Ennis patent (being claim 12 of the patent) it was held that Krasnow et al. had no right to make the claim, but in a subsequent action he reversed his former holding as to that claim, and in the same action suggested that Krasnow et al. could also make claims 1, 2, 3, 13, and 16 of the Ennis patent.

The letter of the associate attorney stated inter alia: " * * * The right to make those claims [i. e. claims 1, 2, 3, 13 and 16] depends in part on a question of interpretation of them but in our review

of the patent we felt that we could not make those claims. On the other hand, we felt we were very close to the right to make claim 4 of the patent, which however, the Examiner groups with those which cannot be made. The Examiner requires a statement of position as to claims 1 to 3, 13 and 16 before August 8, 1941. We are disinclined as we look at the situation at the moment, to place any statement of record saying that we have no right to make claims. Rather than to place of record any such statement, we are disposed to make the claims 1 to 3, 13 and 16 for purposes of interference without any comment in connection therewith, leaving the question of our right to make for determination inter partes. This has the advantage of forcing Ennis to place his position of record if he contends for some limiting interpretation of the claims on the basis of which interpretation he would urge that Krasnow has no right to make the claims."

The statements in the letter of the associate attorney do not impress us as meaning more than that it was felt that Krasnow et al. could not make the claims under the interpretation which they themselves placed upon them. This, in our opinion, should not be held to prejudice their right to have the question of priority determined under the interpretation given the counts by the tribunals of the Patent Office. As is very well said in the brief before us on behalf of Krasnow et al.: "The fact that there may have been a doubt concerning them is of no importance if that doubt was finally resolved, as it must have been, for the counts to have been made."

It is urged on behalf of Doll, however, that in concluding that the Krasnow et al. application of April 16, 1937, disclosed the subject matter defined in the counts the board construed the counts too broadly, and in this connection, it is asserted that if the counts are read on Krasnow et al. they will read upon a patent, No. 2,020,856, issued to one Conrad Schlumberger November 12, 1935. The contention with respect to the Schlumberger patent seemingly was suggested for the first time at the final hearing before the board which disposed of it as follows: "Doll intimates that if the counts are interpreted so broadly as

504

to read on Krasnow et al. they will read upon the Schlumberger patent No. 2,-020,856 which shows simultaneous logging and taking off a side wall sample in an open hole. It is not apparent that this is the case. The fact that Krasnow et al. application Serial No. 392,188 refers to the location of a proper point for *logging* or for *core taking* is not a showing of the equivalence of these operations which would render the Schlumberger patent an anticipation of the counts in issue." (Italics quoted.)

It would seem that if the contention respecting the Schlumberger patent was intended to be seriously relied upon the matter should have been made the subject of a motion under Patent Office rule 122, but, however that may be, we find nothing which would justify a reversal of the board's holding upon this point.

The elaborate brief filed before us on behalf of Doll has been carefully studied in connection with the extensive record in this case. The questions presented are, in the final analysis, questions of fact. We fail to find any error in the interpretation of the counts and, as interpreted by the board, there is no doubt in our minds of their disclosure by Krasnow et al. in their April 1937 application. We are of opinion that the award of priority was properly made, and the decision of the Board of Interference Examiners is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.